```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
PRISCILLA SALZBERG,                                         :
                                                            :
                            Plaintiff,                      :   **MEMORANDUM**
                                                            :   **DECISION AND ORDER**
              - against -                                   :
                                                            :   17 Civ. 2361 (BMC)
CITY OF NEW YORK,                                           :
                                                            :
                            Defendant.                      :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff amended her employment discrimination complaint in response to defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and defendant has renewed its motion against the amended complaint. No plausible inference of disability discrimination can be drawn from this pleading, and the motion is therefore granted.

## SUMMARY OF AMENDED COMPLAINT

Plaintiff was employed as an administrative assistant at the New York City Department of Sanitation ("Sanitation"). The complaint does not allege when her employment began. Plaintiff has epilepsy and an anxiety disorder, both of which are under control with medical treatment and medication.

However, on July 31, 2014, plaintiff had a seizure while on the job and was hospitalized for at least two days. Two of her supervisors, Christopher Volpe and John D'Angello, witnessed the seizure and visited her in the hospital. They told other employees, including Frank Abbriano, Peter Rasso, Richard Baker, Sal Brucculeri, and James Morrissey, about the seizure. The

complaint alleges that these individuals are either employees or supervisors, but it does not allege who was which.

Plaintiff alleges that some or all of these individuals directed "instances of hostility" against her. We are not told what those instances of hostility were. Plaintiff filed internal complaints about these "instances of hostility," but we are not told what the internal complaints said, except that one was for gender discrimination arising from her rejection of a romantic advance (not the subject of this lawsuit). Even as to that one, we are not told exactly what one or more of the employees did that plaintiff thought was gender discrimination.

Shortly before November 14, 2014, plaintiff took a one-week leave of absence. We are not told why. When she returned, Morrissey (who we assume was a supervisor) was dissatisfied with the documentation (apparently medical, although we are not told that) that she provided to support her leave. He sent her to the Sanitation medical office, stating that she was exhibiting erratic behavior and possible illegal drug use.

Plaintiff advised the Sanitation medical staff that she had epilepsy and an anxiety disorder, but that these conditions were under control with medication. A doctor on the medical staff named Barbara Allen, however, determined that plaintiff was medically and psychologically unfit for duty, and she was placed on medical leave for about 30 days. After that absence, two of plaintiff's doctors, and two unidentified Sanitation doctors, were able to convince Barbara Allen that plaintiff could return to duty.

Upon her return, Peter Rasso (again, we are not told if he is a supervisor or a co-worker, but it seems like he must have been the latter) blocked plaintiff's ability to leave her office by placing a chair against the door, and on several occasions, wheeled a chair into her. Plaintiff alleges Rasso committed other "hostile acts" but we are not told what they were. Rasso and the

other employees named above also filed complaints negatively commenting on plaintiff's work and/or conduct.

On or about February 15, 2015, plaintiff complained about Rasso to Morrissey. We are not told the substance of what she said to Morrissey except that Rasso had engaged in "harassing behavior and how it was tormenting her and affecting her ability to work in a safe environment." Morrisey again sent plaintiff to the Sanitation medical staff for erratic behavior. The medical office found that she was suffering from hypertension and sent her home for two days, advising her to consult with her private physician.

When she returned to work, Rasso continued to harass plaintiff. We are again not told what he did except that plaintiff believes it was "verbal abuse." At this point, plaintiff complained to Sanitation's Human Resources Department, although we are again not told what she said, except that it included the chair incidents described above. The Human Resources Department transferred her "to another area away from Rasso and Morrissey."

On March 16, 2015, plaintiff was terminated for not meeting performance expectations and for misconduct. The panel that determined to terminate her included Morrissey.

After she was terminated, there was an unemployment benefits proceeding, in which another Sanitation employee, Ryan David, Deputy Director, Office of Equity, Diversity and Inclusion, testified that plaintiff was terminated for "lawful reasons." The appellate board of the State Unemployment Benefits Division "twice ruled" that plaintiff "did not commit any acts of misconduct."

Based on these allegations, plaintiff asserts nine claims for relief. Three of them are under the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 et seq. – discrimination, hostile work environment, and retaliation. The rest arise under State and City law.

# DISCUSSION

Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), require a plaintiff to provide the grounds upon which her claim rests through factual allegations sufficient to raise a right to relief above the speculative level. A complaint must allege "enough facts to state a claim to relief that is plausible on its face." Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570); see also Iqbal, 556 U.S. at 678 (same).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. To apply that standard, the court accepts as true all well-pleaded factual allegations, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Id. If the court can infer no more than "the mere possibility of misconduct" from the factual averments, id. at 679, or if, in other words, the well-pleaded allegations of the Complaint have not "nudged claims across the line from conceivable to plausible," dismissal is appropriate, Twombly, 550 U.S. at 570; see also Starr, 592 F.3d at 321 (quoting Iqbal, 556 U.S. at 679). The "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555; see also Brown v. Daikin America, Inc., 756 F.3d 219, 228 n.10 (2d Cir. 2014).

The amended complaint is plaintiff's second effort to meet this standard, and she has not come close to succeeding. More than 10 years post-Bell Atlantic, lawyers should understand that words and phrases like "verbal abuse," "instances of hostility," "unlawful," "pretextual," "harassing," and "pattern of unlawful acts," carry no weight in the Rule 8(a) calculus. They are mere conclusions, and when they stand alone, they obscure that which the pleader should be

4

saying – what actually occurred from which an inference of discrimination can plausibly be drawn?

Once we strip out the buzzwords, the amended complaint gives us no reason to believe that plaintiff was discriminated against, or subjected to a hostile work environment, or retaliated against, because of her epilepsy or anxiety disorder. All we know is: (1) she has these conditions and her co-workers and supervisors knew it; (2) one employee pushed a chair into her and blocked her exit from her office, and some undefined number of complaints about the quality of her work were made; and (3) she was terminated. This is no different than the myriad of failed pleadings in the racial or religious discrimination area based on a false syllogism: "(1) I am (insert name of a protected class); (2) something bad happened to me at work; (3) therefore, it happened because I am (insert name of protected class)." Bermudez v. City of New York, 783 F. Supp. 2d 560, 581 (S.D.N.Y. 2011). Indeed, although plaintiff has not pursued the complaint of gender discrimination that she made internally, a claim for relief based on gender discrimination would have been just as possible as her claim for relief for disability discrimination.

Maybe it was gender discrimination that led to the untenable relationship that plaintiff had at Sanitation. Or maybe it was because the people she encountered were just not very nice people. Maybe it was because plaintiff was a poor worker. Or maybe it was a personality conflict. Maybe it really was because they didn't want someone working there with epilepsy and anxiety. The last of these explanations may be actionable under the Rehabilitation Act but the rest are not. All of them are possible based on plaintiff's allegations, but none of them cross the line from possible to plausible.[1]

---

[1] Plaintiff's receipt of unemployment benefits over Sanitation's claim of discharge for cause is immaterial. "It is well-established that the issues before a[n] Unemployment Insurance Appeal Board and the issues involved in a retaliation or discrimination claim are entirely distinct. The former involves 'whether an employee had engaged in misconduct sufficient to disqualify [her] from receiving unemployment benefits,' while the latter concerns 'whether

This defect pervades the amended complaint, so there is no reason to separately deconstruct plaintiff's claims for discrimination, hostile work environment, and retaliation. However, the retaliation claim illustrates the problem particularly well, because we do not even know if plaintiff engaged in protected activity. We know she complained, but only that she complained about being mistreated. If that is all she said regarding her Rehabilitation Act claim, it is not protected activity. Protected activity would require her to have complained that she was being mistreated because of her epilepsy and anxiety. See Kelly v. Howard I. Shapiro & Assoc. Consulting Eng'rs, P.C., 716 F.3d 10, 15 (2d Cir. 2013) (holding that "implicit in the requirement" of pleading the second element of a retaliation claim, a plaintiff must show that the employer "understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by [the Rehabilitation Act]"). And the fact that she complained of gender discrimination, as she alleges, undercuts the plausibility of a claim under the Rehabilitation Act.

The absence of plausible claims under the Rehabilitation Act despite two complaints and two motions to dismiss requires dismissal of the federal claims.

I will also dismiss plaintiff's State and City law claims without prejudice. The case is at an early stage. The pleading standard that plaintiff has failed to meet may be different in state court. The substantive standard for the City claims certainly is different. McCleod v. Jewish Guild for the Blind, __ F.3d __, No. 15-2898-cv, 2017 WL 3044626, at *4 (2d Cir. July 19, 2017). Under these circumstances, dismissal of the non-federal claims with leave to pursue them

---

[the employer] had articulated a legitimate nondiscriminatory reason for terminating . . . employment.'" Baiju v. U.S. Dep't of Labor, No. 12-cv-5610, 2014 WL 349295, at *15 (E.D.N.Y. Jan. 31, 2014) (quoting Liburd v. Bronx Lebanon Hosp. Ctr., No. 07 Civ. 11316, 2009 WL 1605783, at *4 (S.D.N.Y. June 9, 2009). Moreover, the overwhelming majority view in this Circuit is that "an employer's opposition of a terminated employee's application for unemployment benefits is not [an] adverse action for purposes of a retaliation claim." Wright v. City of Syracuse, 10-cv-661, 2014 WL 1293527, at *20 (N.D.N.Y. March 31, 2014) (collecting cases).

in state court is the appropriate disposition.  See 28 U.S.C. § 1367; Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988).

## CONCLUSION

Defendants' motion to dismiss plaintiff's amended complaint is granted.  The State and City law claims are dismissed without prejudice to re-filing in State Court.

**SO ORDERED.**

                                                                               _____
                                                                                        U.S.D.J.

Dated: Brooklyn, New York
        July 31, 2017